MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X
JESUS RODRIGUEZ, MELVIN GUSTAVO
GOMEZ RAMIREZ, and ROCAEL ARTURO
BATEN MIRANDA, *individually and on*
*behalf of others similarly situated,*

                                    *Plaintiffs*,

                  -against-

AL HORNO LEAN MEXICAN KITCHEN 57
INC. (D/B/A AL HORNO LEAN MEXICAN
KITCHEN), CHRIS PIZZIMENTI , JOSUE
MARTINEZ , IVAN GOMEZ , GABRIEL
DOE , and EVELYN DOE ,

                                 *Defendants.*

------------------------------------------------------X

                       **COMPLAINT**

    **COLLECTIVE ACTION UNDER**
    **29 U.S.C. § 216(b) AND RULE 23**
          **CLASS ACTION**

            **ECF Case**

       Plaintiffs Jesus Rodriguez, Melvin Gustavo Gomez Ramirez, and Rocael Arturo Baten

Miranda , individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and

through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and

as against Al Horno Lean Mexican Kitchen 57 Inc. (d/b/a Al Horno Lean Mexican Kitchen),

("Defendant Corporation"), Chris Pizzimenti,  Josue Martinez,  Ivan Gomez,  Gabriel Doe, and

Evelyn Doe, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Al Horno Lean Mexican Kitchen 57 Inc. (d/b/a Al Horno Lean Mexican Kitchen), Chris Pizzimenti, Josue Martinez, Ivan Gomez, Gabriel Doe, and Evelyn Doe.

2.       Defendants own, operate, or control a Mexican restaurant, located at 1089 2nd Ave, New York, NY 10022 under the name "Al Horno Lean Mexican Kitchen".

3.      Upon information and belief, individual Defendants Chris Pizzimenti, Josue Martinez, Ivan Gomez, Gabriel Doe, and Evelyn Doe, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs were employed as delivery workers at the restaurant located at 1089 2nd Ave, New York, NY 10022.

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

6.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.      Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

8.      Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them above the tip-credit rate, but below the minimum wage.

9.      In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

10.     Defendants did not provide Plaintiffs with compliant tip credit notices as required per the FLSA and New York Labor Law.

11.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

12.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

13.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL, including applicable liquidated damages, interest, attorneys' fees and costs.

14.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

16.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a Mexican restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

17.     Plaintiff Jesus Rodriguez ("Plaintiff Rodriguez" or "Mr. Rodriguez") is an adult individual residing in Kings County, New York.

18.     Plaintiff Rodriguez was employed by Defendants at Al Horno Lean Mexican Kitchen from approximately March 2016 until on or about December 11, 2019.

19.     Plaintiff Melvin Gustavo Gomez Ramirez ("Plaintiff Gomez" or "Mr. Gomez") is an adult individual residing in Bronx County, New York.

20.     Plaintiff Gomez was employed by Defendants at Al Horno Lean Mexican Kitchen from approximately May 2016 until on or about November 2018.

21.     Plaintiff Rocael Arturo Baten Miranda ("Plaintiff Baten" or "Mr. Baten") is an adult individual residing in Bronx County, New York.

22.     Plaintiff Baten was employed by Defendants at Al Horno Lean Mexican Kitchen from approximately May 2013 until on or about November 2, 2018.

### *Defendants*

23.     At all relevant times, Defendants owned, operated, or controlled a Mexican restaurant, located at 1089 2nd Ave, New York, NY 10022 under the name "Al Horno Lean Mexican Kitchen".

24.    Upon information and belief, Al Horno Lean Mexican Kitchen 57 Inc. (d/b/a Al Horno Lean Mexican Kitchen) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1089 2nd Ave, New York, NY 10022.

25.    Defendant Chris Pizzimenti is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Chris Pizzimenti is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Chris Pizzimenti possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

26.    Defendant Josue Martinez is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Josue Martinez is sued individually in his capacity as a manager of Defendant Corporation. Defendant Josue Martinez possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

27.    Defendant Ivan Gomez is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Ivan Gomez is sued individually in his capacity as a manager of Defendant Corporation. Defendant Ivan Gomez possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He

determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

28.      Defendant Gabriel Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Gabriel Doe is sued individually in his capacity as a manager of Defendant Corporation. Defendant Gabriel Doe possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

29.      Defendant Evelyn Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Evelyn Doe is sued individually in her capacity as a manager of Defendant Corporation. Defendant Evelyn Doe possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

### *Defendants Constitute Joint Employers*

30.      Defendants operate a Mexican restaurant located in the midtown east neighborhood in Manhattan.

31.    Individual Defendants, Chris Pizzimenti, Josue Martinez, Ivan Gomez, Gabriel Doe, and Evelyn Doe, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

32.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

33.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

34.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

35.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

36.    Upon information and belief, Individual Defendant Chris Pizzimenti operates Defendant Corporation as either an alter ego of  himself and/or fails to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporation for  his own benefit as the sole or majority shareholder,

e) operating Defendant Corporation for  his own benefit and maintaining control over this corporation as a closed Corporation,

f) intermingling assets and debts of  his own with Defendant Corporation,

g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect  his own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

37.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

38.    In each year from 2014 until 2019, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

39.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

40.    Plaintiffs are former employees of Defendants who were employed as delivery workers. Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Jesus Rodriguez*

41.    Plaintiff Rodriguez was employed by Defendants from approximately March 2016 until on or about December 11, 2019.

42.    Defendants employed Plaintiff Rodriguez as a delivery worker.

43.    Plaintiff Rodriguez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

44.    Plaintiff Rodriguez's work duties required neither discretion nor independent judgment.

45.    From approximately March 2016 until on or about May 2016, Plaintiff Rodriguez worked from approximately 10:00 a.m. until on or about 4:00 p.m., 6 days a week (typically 36 hours per week).

46.    From approximately June 2016 until on or about November 2018, Plaintiff Rodriguez worked from approximately 11:00 a.m. until on or about 3:00 p.m. and from approximately 5:00 p.m. until on or about 9:30 p.m., 5 days per week (typically 42.5 hours per week).

47.    From approximately December 2018 until on or about December 11, 2019, Plaintiff Rodriguez worked from approximately 11:00 a.m. until on or about 1:30 p.m.   and from approximately 3:00 p.m. until on or about 8:00 p.m., Mondays and Tuesdays, from approximately 11:00 a.m. until on or about 5:00 p.m., Wednesdays and Thursdays, and from approximately 11:00 a.m. until on or about 3:00 p.m., on Fridays (typically 31 hours per week).

48.    Throughout his employment, Defendants paid Plaintiff Rodriguez his wages by check.

49.    From approximately March 2016 until on or about December 2017, Defendants paid Plaintiff Rodriguez $9.00 per hour.

50.     From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Rodriguez $10.85 per hour worked up to 40 hours and $16.275 for hours worked in excess of 40 hours per work week.

51.     From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Rodriguez $10.85 for spread of hours pay when he worked 10 or more hours in a work day.

52.     From approximately January 2019 until on or about December 11, 2019, Defendants paid Plaintiff Rodriguez $12.50 per hour.

53.     Upon information and belief, Defendants paid Plaintiff Rodriguez the overtime rate of 1.5 times the tip credit rate.

54.     Defendants did not pay Plaintiff Rodriguez wages for one week of work.

55.     Plaintiff Rodriguez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

56.     For example, Defendants required Plaintiff Rodriguez to work an additional 15 minutes past his scheduled departure time three days a week, and did not pay him for the additional time he worked.

57.     Plaintiff Rodriguez was never notified by Defendants that his tips were being included as an offset for wages.

58.     Defendants charged delivery clients a delivery fee and did not share any part of this fee with Plaintiff Rodriguez.

59.     On a number of occasions, Defendants required Plaintiff Rodriguez to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

60.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Rodriguez regarding overtime and wages under the FLSA and NYLL.

61.     Defendants did not provide Plaintiff Rodriguez an accurate statement of wages, as required by NYLL 195(3).

62.     Defendants did not give any notice to Plaintiff Rodriguez, in English and in Spanish (Plaintiff Rodriguez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

63.     Defendants required Plaintiff Rodriguez to purchase "tools of the trade" with his own funds—including a helmet, a U lock, lights, and two bicycles.

*Plaintiff Melvin Gustavo Gomez Ramirez*

64.     Plaintiff Gomez was employed by Defendants from approximately May 2016 until on or about November 2018.

65.     Defendants ostensibly employed Plaintiff Gomez as a delivery worker.

66.     Plaintiff Gomez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

67.     Plaintiff Gomez's work duties required neither discretion nor independent judgment.

68.     From approximately May 2016 until on or about January 2017, Plaintiff Gomez worked from approximately 4:00 p.m. until on or about 9:00 p.m., 2 days a week and from approximately 4:00 p.m. until on or about 9:30 p.m., 2 days a week (typically 32 hours per week).

69.     From approximately February 2017 until on or about November 2018, Plaintiff Gomez worked from approximately 6:00 p.m. until on or about 9:00 p.m., 4 days a week (typically 16 hours per week).

70.     Throughout his employment, Defendants paid Plaintiff Gomez his wages by check.

71.    From approximately May 2016 until on or about January 2018, Defendants paid Plaintiff Gomez $9.50 per hour.

72.    From approximately February 2018 until on or about November 2018, Defendants paid Plaintiff Gomez $12.50 per hour.

73.    Upon information and belief, Defendants paid Plaintiff Gomez the overtime rate of 1.5 times the tip credit rate.

74.    Defendants did not pay Plaintiff Gomez any wages for his last week of work.

75.    Defendants never granted Plaintiff Gomez any breaks or meal periods of any kind.

76.    Plaintiff Gomez was never notified by Defendants that his tips were being included as an offset for wages.

77.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Gomez's wages.

78.    Defendants charged delivery clients a delivery fee and did not share any part of this fee with Plaintiff Gomez.  In addition, most delivery clients assumed that the delivery fee was the tip for Plaintiff Gomez and did not write in any tip for him.

79.    On a number of occasions, Defendants required Plaintiff Gomez to sign a document, the contents of which he was not allowed to review in detail.

80.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gomez regarding overtime and wages under the FLSA and NYLL.

81.    Defendants did not provide Plaintiff Gomez an accurate statement of wages, as required by NYLL 195(3).

82.     Defendants did not give any notice to Plaintiff Gomez, in English and in Spanish (Plaintiff Gomez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

83.     Defendants required Plaintiff Gomez to purchase "tools of the trade" with his own funds—including a bicycle, a jacket, permeable pants, and rain boots.

*Plaintiff Rocael Arturo Baten Miranda*

84.     Plaintiff Baten was employed by Defendants from approximately May 2013 until on or about November 2, 2018.

85.     Defendants ostensibly employed Plaintiff Baten as a delivery worker.

86.     Plaintiff Baten regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

87.     Plaintiff Baten's work duties required neither discretion nor independent judgment.

88.     Throughout his employment with Defendants, Plaintiff Baten regularly worked in excess of 40 hours per week.

89.     From approximately January 2014 until on or about June 2016, Plaintiff Baten worked from approximately 10:00 a.m. until on or about 3:00 p.m. and from approximately 4:30 p.m. until on or about 9:00 p.m. three days a week and from approximately 10:00 a.m. until on or about 3:00 p.m. and from approximately 4:30 p.m. until on or about 9:30 p.m. three days a week ( typically 58.5 hours per week).

90.     From approximately July 2016 until on or about November 2, 2018, Plaintiff Baten worked from approximately 10:00 a.m. until on or about 3:00 p.m. and from approximately 4:30 p.m. until on or about 9:00 p.m., 3 days a week and from approximately 9:00 a.m. until on or about

3:00 p.m. and from approximately 4:30 p.m. until on or about 9:30 p.m., 2 days a week (typically 50.5 hours per week).

91.     Throughout his employment, Defendants paid Plaintiff Baten his wages by check.

92.     From approximately January 2014 until on or about December 2014, Defendants paid Plaintiff Baten $5.75 per hour.

93.     From approximately January 2015 until on or about December 2015, Defendants paid Plaintiff Baten $6.25 per hour.

94.     From approximately January 2016 until on or about December 2017, Defendants paid Plaintiff Baten $9.00 per hour.

95.     From approximately January 2018 until on or about November 2, 2018, Defendants paid Plaintiff Baten $10.85 per hour.

96.     Upon information and belief, Defendants paid Plaintiff Baten the overtime rate of 1.5 times the tip credit rate.

97.     Defendants did not pay Plaintiff Baten any wages for his first week of work.

98.     Plaintiff Baten was never notified by Defendants that his tips were being included as an offset for wages.

99.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Baten's wages.

100.     Defendants charged delivery clients a delivery fee and did not share any part of this fee with Plaintiff Baten.  In addition, most delivery clients assumed that the delivery fee was the tip for Plaintiff Baten and did not write in any tip for him.

101.     On a number of occasions, Defendants required Plaintiff Baten to sign a document, the contents of which he was not allowed to review in detail.

102.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Baten regarding overtime and wages under the FLSA and NYLL.

103.    Defendants did not provide Plaintiff Baten an accurate statement of wages, as required by NYLL 195(3).

104.    Defendants did not give any notice to Plaintiff Baten, in English and in Spanish (Plaintiff Baten's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

105.    Defendants required Plaintiff Baten to purchase "tools of the trade" with his own funds—including a bicycle and a helmet.

*Defendants' General Employment Practices*

106.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

107.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

108.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

109.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

110.    Defendants required Plaintiffs and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

111.    Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

112.    Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

113.    Plaintiffs and all other tipped workers were paid at a rate that was below minimum wage by Defendants.

114.    However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

115.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

116.    In violation of federal and state law as codified above, Defendants classified Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was below minimum wage when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

117.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

118.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

119.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received.

120.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by requiring delivery customers to pay a delivery fee and not sharing this fee with Plaintiffs; this policy resulted in many delivery customers not writing in any tips for Plaintiffs.

121.    On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail. Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

122.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

123.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

124.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

125.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

126.    Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

127.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period"), as employees of Defendants (the "FLSA and Rule 23 Class Period").

128.    At all relevant times, Plaintiffs and other members of the FLSA and Rule 23 class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

129.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FEDERAL RULE 23 CLASS ACTION ALLEGATIONS

130.    Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

131.    Plaintiffs bring their New York Labor Law minimum wage, wage deduction and liquidated damages claims on behalf of all persons who were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

132.    The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over forty members of the Class during the Class Period.

133.    There are questions of law and fact common to the Class including:

a)  What proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b) What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

c) What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

d) Whether Defendants failed and/or refused to pay Plaintiffs the minimum wage within the meaning of the New York Labor Law;

e) At what common rate, or rates subject to common methods of calculation, were Defendants required to pay the class members for their work; and

f) What were the common conditions of employment and in the workplace, such as recordkeeping, clock- in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

134.       The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of overtime, non-payment of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

135.       The representative parties will fairly and adequately protect the interests of the Class and had no interests antagonistic to the class. The Named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

136.       The common questions of law and fact predominate over questions affecting only individual members.

137.        A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

138.        Defendants acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

139.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

140.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA and Rule 23 class members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

141.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

142.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

143.    Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

144.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

145.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

146.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

147.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA and Rule 23 class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

148.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

149.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

150.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

151.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

152.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

153.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

154.    Plaintiffs were damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

155.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

156.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

157.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

158.    Plaintiffs were damaged in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

### OF THE NEW YORK COMMISSIONER OF LABOR

159.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

160.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

161.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

162.    Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE

## REQUIREMENTS OF THE NEW YORK LABOR LAW

163.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

164.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

165.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

166.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

167.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular

hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

168.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

169.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

170.     Defendants required Plaintiffs (and the FLSA and Rule 23 class members) to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

171.     Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

## OF THE NEW YORK LABOR LAW

172.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

173.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

174.     New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

175.    Defendants charged patrons a "delivery fee".

176.    Defendants charged patrons who used the seamless app a "delivery fee".

177.    Defendants unlawfully retained delivery fees charged to patrons.

178.    Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

179.    Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA and Rule 23 class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA and Rule 23 class members;

(f)      Awarding Plaintiffs and the FLSA and Rule 23 class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)      Awarding Plaintiffs and the FLSA and Rule 23 class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)      Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs (and the FLSA and Rule 23 class members);

(i)      Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)      Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)      Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(l)      Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m)      Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(n)      Awarding Plaintiffs damages and the FLSA and Rule 23 class members for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as

applicable

(o)    Awarding Plaintiffs and the FLSA and Rule 23 class members damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)    Awarding Plaintiffs and the FLSA and Rule 23 class members liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)    Awarding Plaintiffs and the FLSA and Rule 23  class members pre-judgment and post-judgment interest as applicable;

(r)     Awarding Plaintiffs and the FLSA and Rule 23 class members the expenses incurred in this action, including costs and attorneys' fees;

(s)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York

January 2, 2020

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:        /s/ Michael Faillace
Michael Faillace [MF-8436]

60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*